UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRUCE LAMONT SMITH | ) | |
| | ) | |
| v. | ) | No. 3:07-0329 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody (Docket Nos. 1, 2), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se. After the Petition was filed, the Court appointed counsel for the Petitioner (Docket No. 12). The Government has filed a response in opposition to the Motion (Docket No. 11), and counsel for the Petitioner has filed a supplemental brief in support of Petitioner's Motion (Docket No. 30).

The Court held an evidentiary hearing in this case on December 17, 2007. Based on the evidence adduced at the hearing, the pleadings and briefs filed by the parties, the record of Petitioner's underlying conviction, and the entire record in this case, the Court concludes that Petitioner's Motion is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count One), possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and for carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). (Indictment (Docket No. 10 in Case No. 3:05-00097). Before trial, the

Petitioner pled guilty to Counts One and Two of the Indictment through a Rule 11(c)(1)(C) Plea Agreement. (Docket Nos. 28, 29 in Case No. 3:05-00097). Paragraph 11(d) of the Plea Agreement provides that the parties agree to a sentence of 168 months. (Docket No. 29 in Case No. 3:05-00097). The Agreement also contained a "Wavier of Appellate Rights" provision. (Id.)

The case was then transferred to the undersigned judge. The Court subsequently sentenced the Petitioner to a total term of 168 months imprisonment, 120 months on Count One, to be served concurrently with 168 months on Count Two. (Docket No. 39 in Case No. 3:05-00097). Petitioner was advised of his right to appeal and that any notice of appeal had to be filed within ten days. (Transcript of Sentencing Hearing, at 10 (Docket No. 42 in Case No. 3:05-00097)). The record reveals that no appeal was taken by either the Petitioner or the Government.

### III. Analysis

A. The Petitioner's Claims

Petitioner contends that he received ineffective assistance of trial counsel because counsel failed to file an appeal challenging his conviction and sentence. At the hearing on the Section 2255 Motion, counsel for Petitioner represented that he is not pursuing the other issues raised in Petitioner's pro se Section 2255 Motion.

B. Section 2255

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy,

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act

2

however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

C. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

---

of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

3

relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000), the Supreme Court reiterated prior decisions that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed by a client to do so. In such a case, the defendant is entitled to a delayed appeal and need not show any likelihood of success on its merits. Id.

When the client has not specifically instructed his or her attorney to file an appeal, however, the court is to consider whether the attorney "consulted" with the defendant about the advantages and disadvantages of filing an appeal. 120 S.Ct. at 1035. If the attorney has consulted with his client about the possibility of filing an appeal, his or her conduct is considered professionally unreasonable only if he or she fails to follow the defendant's express instructions. Id. If the attorney failed to consult with his or her client, the court is to examine whether that failure constitutes deficient performance. Id. at 1035-36. See also Regalado v. United States, 334 F.3d 520, 524-25 (6th Cir. 2003).

4

In this case, Hugh Mundy testified that he was appointed to represent the Petitioner in the underlying criminal case prior to the filing of the Indictment. At that time, he began discussions with the Assistant United States Attorney assigned to the case, Philip Wehby, in an effort to persuade the Government not to include a Section 924(c) firearm charge (18 U.S.C. § 924(c)) in the Indictment as that charge would substantially increase the Petitioner's sentencing exposure. When he was unable to do so, he continued discussions with the Government in an effort to reach a deal that would result in dismissal of the Section 924(c) count of the Indictment or otherwise lower the Petitioner's sentencing exposure.

According to Mr. Mundy, Petitioner's sentencing exposure was at least 300 months "or so" if he had gone to trial and was convicted on all counts, and was at least 262 months if he pled guilty to all counts without any plea deal. Mr. Mundy testified that he believed the Government's proof of guilt to be substantial as the police apprehended the Petitioner after a narcotics transaction during which he was wearing a loaded 9 mm pistol on a string around his neck. Mr. Mundy explained that Petitioner's sentence was driven by his status as a "career offender," which was based on two prior convictions for robbery, with separate arrest dates and an intervening arrest, both involving firearms.

Mr. Mundy testified that he wrote Mr. Wehby two or more letters outlining the Petitioner's background and other mitigation evidence as part of his effort to lower Petitioner's sentencing exposure. Mr. Wehby eventually agreed to dismiss the Section 924(c) count, in exchange for a sentence of 180 months.

Mr. Mundy testified that he still thought that the sentence was too high, and persuaded his supervisor to meet with Mr. Wehby and Mr. Wehby's supervisor in an effort to get an offer

for a lower sentence. As a result of that meeting, the Government agreed to a plea deal in which the Petitioner would receive a sentence of 168 months under a binding Rule 11(c)(1)(C) plea agreement, and both parties would waive certain appeal rights.

During this time, Mr. Mundy also arranged proffer sessions in which the Petitioner offered information as another avenue to try to obtain a lower sentence. Although the information did not result in a substantial assistance motion from the Government, Mr. Mundy testified that he believed the Petitioner's cooperation helped to ultimately persuade the Government to offer him the 168-month sentence.

Mr. Mundy testified that he and his supervisor met with the Petitioner and explained the Government's plea offer to him. Specifically, Mr. Mundy testified that he explained that a Rule 11(c)(1)(C) agreement is one in which the Petitioner would be agreeing to the sentence, and that he explained the waiver of appeal provision in the agreement. According to Mr. Mundy, he discussed possible appellate issues and discussed the advantages and disadvantages of agreeing to such an appellate waiver provision. Mr. Mundy testified that he explained to the Petitioner that he did not think any possible appellate issues were more valuable than lowering his sentencing exposure to the 168-month level in light of the fact that his sentencing range upon conviction of all counts was over 300 months. According to Mr. Mundy, they could think of no other way to get the Petitioner a sentence for less than 168 months. Mr. Mundy testified that after this discussion, Petitioner agreed to the deal offered by the Government, and he is satisfied that the Petitioner understood the ramifications of waiving his appellate rights.

The Petitioner subsequently appeared before Judge William J. Haynes, Jr. and entered his guilty plea. Mr. Mundy testified that he met with the Petitioner after the plea to review the Pre-

6

Sentence Investigation Report. After the plea hearing, the case was transferred to this Court, and the Petitioner was sentenced to 168 months in accordance with the Rule 11(c)(1)(C) plea agreement. According to Mr. Mundy, he met with Petitioner's mother after the sentencing hearing, but did not meet with Petitioner in his cell after the hearing.

According to Mr. Mundy, Petitioner did not ask him to file an appeal, either in person or otherwise, at any time before the sentencing hearing, during the sentencing hearing or after the sentencing hearing.

The Petitioner testified at the hearing that Mr. Mundy and his supervisor talked him into accepting the plea offer of 168 months. He said they failed to explain that he was waiving his appeal rights, and that he told them during these discussions that he wanted to accept the offer, but appeal the sentence to which he was agreeing. Petitioner testified that he did not know he had waived his appeal rights until after he got to the "bureau."

Petitioner testified that, after he pled guilty, he told Mr. Mundy that he wanted to appeal and Mr. Mundy told him that he could not. Petitioner testified that Mr. Mundy failed to go over the Pre-Sentence Investigation Report with him, or to meet with him at all, before sentencing. The Petitioner testified that he called Mr. Mundy a lot and told him he wanted to appeal.

At the sentencing hearing, according to the Petitioner, the Court told him that he had waived his appeal rights, but that he could appeal. He did not recall any deadline for filing an appeal. The Petitioner testified that, at the end of the hearing, Mr. Mundy asked him if he wanted to appeal, and he said yes. The Petitioner stated that Mr. Mundy and his supervisor met with him after the sentencing hearing and told him they would try and get him less time based on a change in the law.

7

The Court finds that the credibility determination in this case weighs in favor of Mr. Mundy. The Court credits Mr. Mundy's testimony that he met with and explained the plea agreement, including the waiver of appeal provision, and the advantages and disadvantages of agreeing to such a provision. The Court is persuaded that Mr. Mundy consulted with the Petitioner about a possible appeal during this time and that the Petitioner agreed not to pursue an appeal in exchange for a 168-month sentence. The Court credits Mr. Mundy's testimony that the Petitioner did not ask him to file an appeal at any time.

The Court finds that Petitioner's testimony lacks credibility, as much of his testimony is in direct contradiction to facts in the record. Despite his claim that he did not know he was waiving his appeal rights as part of the plea agreement, the record indicates that the waiver of appeal provision was specifically discussed at the guilty plea hearing:[2]

Q. Do you understand that by entering this plea of guilty, under this agreement

---

[2] The waiver provision, Paragraph 22 of the Plea Agreement, states as follows:

> The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal a sentence imposed pursuant to the above agreement or any sentence of 168 months imprisonment regardless of the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement. The defendant also knowingly waives the right to challenge a sentence of 168 months imprisonment imposed by the Court and the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. Such waiver does not apply, however, to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. In exchange for the agreement made by the defendant in waiving a sentence appeal, the United States of America similarly waives its right to appeal the sentence under 18 U.S.C. § 3742.

(Docket No. 29 in Case No. 3:05-00097; (Government's Collective Exhibit 1)). The Petitioner signed the Plea Agreement. (Id.)

> you are giving up your right to challenge your conviction except upon the grounds of ineffective assistance of counsel, prosecutorial misconduct, or an involuntary plea. Do you understand that?
>
> A. Yes, sir.
>
> Q. Do you understand that you are waiving your rights to challenge the sentence imposed by this case, and the government is also waiving its rights to appeal. Do you understand that?
>
> A. Yes, sir.
>
> Q. Knowing those two things, do you still want to submit your plea?
>
> A. Yes, sir.

(Transcript of Guilty Plea Hearing, at 19-20 (Docket No. 43 in Case No. 3:05-00097) (Petitioner's Exhibit 11)).

In addition, at the sentencing hearing, the Court specifically asked Mr. Mundy if the Petitioner had read the Pre-Sentence Investigation Report, and Mr. Mundy answered in the affirmative. (Transcript of Sentencing Hearing, at 3 (Docket No. 42 in Case No. 3:05-00097)(Petitioner's Exhibit 10)). The Petitioner did not state to the Court at that hearing or otherwise that he had not seen the Pre-Sentence Investigation Report, as he testified in this proceeding. At the conclusion of the hearing, the Court specifically told the Petitioner he had 10 days to appeal. (Id., at 10).

As the Court has found that defense counsel specifically discussed the possibility of filing an appeal with the Petitioner and the Petitioner did not expressly direct defense counsel to do so, the Court concludes that it was not professionally unreasonable for defense counsel not to file an appeal. Petitioner's Section 2255 Motion is DENIED, and this case is DISMISSED.

IV. Conclusion

9

For the reasons set forth herein, the Court concludes that Petitioner's Motion filed under 28 U.S.C. § 2255 should be denied.

Should the Petitioner give timely notice of an appeal from this Memorandum and accompanying Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

*[signature: Todd Campbell]*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

10